# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| PENNY M. SOLUM,<br><br>     Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>     Respondent. | Case No.: 09-CV-00675-REB<br><br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Penny M. Solum's Motion for Summary Judgment (Docket No. 13), seeking review of the Social Security Administration's decision to deny her claim for disability insurance benefits. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

Penny M. Solum ("Petitioner") applied for disability insurance benefits on November 2, 2006, alleging disability beginning May 1, 2006. (AR 14, 101, 161-166). Petitioner's claim was initially denied on December 18, 2006 (AR 116-117) and, again, on reconsideration on April 16, 2007 (AR 119-122). On June 14, 2007, petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 127). On September 3, 2008, ALJ R.J. Payne held a hearing in Spokane, Washington, at which time Petitioner, represented by attorney Dana C.

**MEMORANDUM DECISION AND ORDER - 1**

Madsen, appeared and testified. (AR 60-93). An impartial medical expert, Scott Mabee, Ph.D., also appeared and testified during the same September 3, 2008 hearing.

On October 2, 2008, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act, based on her ability to perform past relevant work as a newspaper carrier/deliverer and automobile lot/dealership attendant. (AR 98-110). Petitioner requested a review of the ALJ's October 2, 2008 decision and, on January 9, 2009, the Appeals Council remanded the case to the ALJ for further administrative proceedings. (AR 111-115).

The ALJ held a second hearing on June 4, 2009 in Spokane, Washington at which time Petitioner, represented by attorney Dana C. Madsen, appeared and testified. (AR 38-59). An impartial medical expert, Margaret Moore, Ph.D., also appeared and testified at the June 4, 2009 hearing.

On July 13, 2009, the ALJ issued a second decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act because she maintained the capacity to return to her past work as a newspaper carrier/deliverer. (AR 14-31). Petitioner timely requested review from the Appeals Council on July 24, 2009. (AR 10). On October 16 & 30, 2009, the Appeals Council denied Petitioner's request for review (AR 1-7), making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely files the instant action, arguing that the decisions of the ALJ and Appeals Council are "not supported by substantial evidence." *See* Pl.'s Mem. of Authorities, p. 16 (Docket No. 13, Att. 1). Specifically, Petitioner asserts that the ALJ (1) erred in finding that Petitioner was capable of performing medium level,

simple, unskilled work and, in doing so, failed to provide specific and legitimate reasons for rejecting the opinions of Petitioner's treating physicians; (2) failed to fully develop the record by not sending her for a psychological evaluation; and (3) failed to call a vocational expert at the administrative hearing. *See id.* at pp. 7 & 11. Petitioner therefore requests that the Court reverse the ALJ's decision and order the payment of benefits. *See id.* at p. 16.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the

conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony,

*Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel.*

*Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically

flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the

evidence is susceptible to more than one rational interpretation in a disability proceeding, the

reviewing court may not substitute its judgment or interpretation of the record for that of the

ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal

standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.

*See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying

the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

### A.    Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a

sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§

404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within

the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in

substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  SGA is

defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2006 through her date last insured of March 31, 2009. (AR 19).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: dysthymic disorder (a depressive disorder) and anxiety disorder. (AR 19).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  (AR 22).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual functional capacity to perform medium level, simple, unskilled work, with the following limitations: (1) she could lift 50 pounds occasionally and 20-25 pounds frequently; (2) she could sit for two hours at one time for six hours total in an 8-hour workday; (3) she could stand for two hours at a time for six hours total in an 8-hour workday; and (4) she could walk for two hours at a time for six hours total in an 8-hour workday.  (AR 24 & 27).  As a result, the ALJ determined that Petitioner maintained the capacity to return to her past work as a newspaper

carrier/deliverer, as such work "did not require the performance of work-related activities precluded by the claimant's residual functional capacity." (AR 30).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner is capable of performing her past relevant work and, thus, did not address whether Petitioner is able to do other work. (AR 30-31).

**B.    Analysis**

1.    Petitioner's Residual Functional Capacity

An applicant's residual functional capacity is an assessment of that individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis - in other words, what an individual can still do despite her limitations. *See* SSR 96-8P, 1996 WL 374184. In assessing an applicant's residual functional capacity, the ALJ must consider all of the relevant evidence in the case record, including information about the individual's symptoms and any "medical source statements" submitted by an individual's treating source or other acceptable medical sources. *See id.* Here, Petitioner takes issue with the ALJ's conclusion that Petitioner has the residual functional capacity to perform medium work (AR 24), arguing that she is "much more limited from a psychological standpoint than what was

determined by the ALJ." *See* Pl.'s Mem. of Authorities, p. 10 (Docket No. 13, Att. 1). On this issue, Petitioner "believes that the ALJ failed to properly reject the opinions of [her] treating and examining physicians" - Scott Reed, M.D., and Dennis R. Pollack, Ph.D. *See id*. at pp. 7, 12-14.

The Ninth Circuit has held that a treating or examining physician's medical opinion is entitled to special consideration and weight. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). These physicians' opinions are given that deference because "[they are] employed to cure and ha[ve] a greater opportunity to know and observe the individual." *Id*. However, a treating or examining physician's opinion is not necessarily conclusive. *Id*. at 762. Where the treating or examining physician's opinions are not contradicted by another doctor, they may be rejected only for clear and convincing reasons; even if contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons, supported by substantial evidence in the record for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).[1]

Therefore, merely concluding that a particular physician is a treating physician does not mandate the adoption of that physician's opinions. In addition to the standards outlined above, treating physicians' opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data. *Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (lack of objective medical findings, treatment notes, and rationale to support opinion is sufficient reason for rejecting that opinion).

---

[1] Regardless, a treating or examining physician's opinion on the ultimate issue of disability is not conclusive. *Rodriguez,* 876 F.2d at 762 (citations omitted); *see also* SSR 96-5P, 1996 WL 374183, *2 ("The regulations provide that the final responsibility for deciding [whether an individual is 'disabled' under the Act] . . . is reserved to the Commissioner."); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.").

### a.     Dr. Reed

Dr. Reed stated at least three different times that Petitioner maintained a level of disability that prevented her from being gainfully employed.  (AR 248, 252, & 315).  Petitioner understandably points to these instances in support of her claim of disability.  *See* Pl.'s Mem. of Authorities, pp. 8-11 (Docket No. 13, Att. 1).  However, Dr. Reed's opinions in these respects should not be considered dispositive on the issue of Petitioner's disability - as that term is used within the Social Security context.

First, although Dr. Reed treated Petitioner over several years, Petitioner consulted with him as a general practitioner for, among other things, depression, anxiety, problems with her menstrual period, rashes, chest pains, allergies, headaches, ear pain, a sore throat and restless legs.  This fact alone is unremarkable and not dispositive in any particular respect; however, it highlights the fact that certain ultimate issues - whether a claimant is disabled and/or whether the claimant is able to be gainfully employed - are reserved for the Commissioner's determination.  *See supra* at p. 8, n. 1.  Therefore, Dr. Reed's affirmative opinions in these respects get no deference because they invade the province of the Commissioner to make the ultimate disability determination.

Second, notwithstanding what Dr. Reed may have subjectively meant when using the terms "considerable disability" (AR 248), "disabled" (AR 252), "employability" (*id*.), and "ability to maintain gainful employment" (AR 314), an examination of Dr. Reed's own notes suggest a less significant limitation:

> • On June 20, 2006, Petitioner (while still working) visited Dr. Reed for "increasing problems with her mood."  (AR 250).  Dr. Reed diagnosed Petitioner with "adjustment reaction, with symptoms of depression," further noting "no previous history of depression."  *Id*.

- On July 21, 2006, Petitioner (again, while still working) reported "doing better" and that "she is going to be able to continue working given present circumstances." (AR 249).

- On September 1, 2006, however, Petitioner wanted "to discuss disability." (AR 249). At that time, although opining that Petitioner "has a level of disability that may preclude her having gainful employment[,]" Dr. Reed considered Petitioner's depression to be "doing well on Zoloft" and even referred her to a vocational rehabilitation expert. (AR 248).

- After applying for and being denied disability benefits, Petitioner next saw Dr. Reed on January 19, 2007 while "in the process of filling out her appeal." (AR 252). Even though Dr. Reed indicated that Petitioner "still has some problem with mild depression" and "appear[s] in only mild distress[,]" he "[d]id assist [Petitioner] with completion of form by making statement that [he] felt that she was disabled." (*Id*.).

- On May 2, 2007, Petitioner sought treatment for a rash on her forearm and face, problems with her menstrual period, and ear pain. (AR 268-269). Although "depressive disorder" was listed as a chronic condition, Petitioner's depression was not specifically treated at this time. (*Id*.).

- On June 5, 2007, Petitioner sought treatment for dizziness and a plugged ear. (AR 270-271). Again, although "depressive disorder" was listed as a chronic condition, Petitioner's depression was not specifically treated at this time. (*Id*.).

- On July 17, 2007, Petitioner sought treatment for menstrual irregularity. (AR 272). Again, although "depressive disorder" was listed as a chronic condition, Petitioner's depression was not specifically treated at this time. (*Id*.).

- On August 6, 2007, Petitioner sought treatment for heavy menstrual bleeding. (AR 273). Petitioner's depression was not mentioned. (*Id*.).

- On May 2, 2008, Petitioner sought treatment for a heavy chest, sore throat, and ear pain. (AR 274-275). Although "depressive disorder" was listed as a chronic condition, "no unusual anxiety or evidence of depression" was noted. (*Id*.).

- In response to Petitioner's counsel's request, on September 23, 2008, Dr. Reed stated that he "concur[s][2] with the findings that the patient's current disabilities preclude her ability to maintain gainful employment." (AR 314).

- On January 28, 2009 (after the Appeals Council's January 9, 2009 remand), Petitioner sought treatment for persistent depression, anxiety, headaches, and restless legs. (AR 316-319). Petitioner appeared "in no acute distress" but maintained an "anxious affect." (AR 318).

Disregarding Dr. Reed's conclusive findings of Petitioner's disability and/or inability to maintain gainful employment as this Court must do (*see supra* at p. 8, n. 1), Dr. Reed found Petitioner to have (1) "symptoms of depression" (AR 250); (2) "mild depression" (AR 252); and (3) "mild distress" (*id.*). These findings are not inconsistent with the ALJ's findings here. Indeed, the ALJ determined that Petitioner's dysthymic disorder and anxiety disorder were not only impairments, but "severe impairments." *See supra* at p. 5 ("An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.") (citations omitted).

Third, Dr. Reed's opinions are disputed by other medical evidence within the record, which contradicts Dr. Reed's findings of incapacitating disability. For example:

- On December 18, 2006, Maximo J. Callao, Ph.D., performed a "Psychiatric Review Technique." (AR 253-267). Dr. Callao found that, although Petitioner suffered from depression and adjustment reaction disorder (AR 256 & 258), she only had mild limitations as to (1) maintaining social functioning and (2) maintaining concentration, persistence or pace (AR 263). Dr. Callao also concluded that Petitioner's depression "is showing improvement with treatment and it is anticipated that her condition with

---

[2] It is unclear what "findings" Dr. Reed is referring to when making this statement to Petitioner's counsel. It may be that Dr. Reed is speaking of Dr. Pollack's August 11, 2008 report (*see infra* at pp. 14-17), however the record does not verify this fact one way or the other.

continued treatment will not be disabling for 12 full months since getting treatment in [June 2006]." (AR 265). Dave Sanford, Ph.D., affirmed Dr. Callao's findings on April 9, 2007. (AR 267).

- On September 3, 2008, W. Scott Mabee, Ph.D., performed a second Psychiatric Review Technique. (AR 293-311). Therein, Dr. Mabee noted that Petitioner suffered from affective (dysthymia) and anxiety-related (anxiety) disorders. (AR 294, 297, & 299). Additionally, Dr. Mabee indicated that Petitioner maintained (1) mild limitations as to daily living activities and maintaining social functioning; (2) moderate limitations as to maintaining concentration, persistence, or pace; and (3) no episodes of an extended decompensation episode. (AR 304). According to Dr. Mabee's "Mental Medical Source Statement," Petitioner had no significant limitations with respect to the subcategories involving (1) "understanding and memory"; (2) "sustained concentration and persistence";[3] (3) "social interaction"; and (4) "adaptation." (AR 308-310). Dr. Mabee ultimately concluded that Petitioner "[g]enerally should be able to tolerate lower demand work." (AR 311).

- On June 4, 2009, Margaret R. Moore, Ph.D., performed a third Psychiatric Review Technique. (AR 321-338). Dr. Moore found that Petitioner suffered from affective (dysthymia), anxiety-related (anxiety), and personality (pathological dependence) disorders. (AR 321, 324, 326, & 328). Additionally, Dr. Moore noted that Petitioner maintained (1) no to mild limitations as to daily living activities; (2) mild limitations as to maintaining social functioning; (3) mild to moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of an extended decompensation episode. (AR 331). Within the accompanying Mental Medical Source Statement, Dr. Moore stated that Petitioner had moderate limitations as to setting realistic goals or making plans independently of others - Dr. Moore found either (1) no limitation or (2) no significant limitation as to the balance of Petitioner's mental activities. (AR 335-337).

---

[3] Within his Mental medical Source Statement, Dr. Mabee actually indicated a *range* between "no significant limitation" and "moderate limitation" as to Petitioner's (1) "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; and (2) "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (AR 309).

The point here is that the objective medical evidence offered by the overall balance of Petitioner's treating and examining physicians (coupled with the fact that Petitioner never actively sought any mental health or counseling treatment)[4] eventually evolved to contemplate Petitioner's return to work in *some* capacity.  Such substantial evidence offers a clear and convincing explanation as to why the ALJ gave little to no weight to Dr. Reed's opinions when it came to commenting on the ultimate issue of Petitioner's disability.  This is not to say that this Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations; to be sure, Petitioner appropriately identifies conflicting evidence in support of her position. While such conflicting evidence may not have been as favorably received as Petitioner naturally hoped, it is clear that the ALJ's decision to question Dr. Reed's disability opinion is not without

_____

[4] On this point, at the June 4, 2009 hearing, Dr. Moore testified:

> [Petitioner] really has no record of mental health treatment other than that being followed by her primary care provider, Dr. Reed, who has prescribed antidepressants, occasionally, anxiety medications.  His notes are interesting for their agreeable nature, I would say.  He took very little information in terms of observation about what symptoms might be or how she looks, presents in terms of his visits with her. His diagnoses are really quite informal and seem more to adjustment reaction.   Then, as the claimant apparently decided to pursue disability, he became agreeable with that point as well. . . . .

> [Dr. Reed] is a primary care provider.  He's not a mental health specialist.   He does not document clearly the symptoms, the responses to medication, the essence of what might help me understand why he makes the conclusions he does.  He does not refer her for mental health treatment in any other kind of form and, in fact, at one point he suggested voc-rehab might be helpful for her so I don't put much weight on his opinions at all.

(AR 42, 46-47).

**MEMORANDUM DECISION AND ORDER - 13**

appropriate reasons for doing so.  As required by controlling law, the ALJ will not be second-guessed in this respect.  *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### b.    *Dr. Pollack*

On July 7, 2008, Petitioner underwent a consultative psychological evaluation - arranged by Petitioner's counsel - with Dr. Pollack.  (AR 277-287).  Dr. Pollack performed several tests (Minnesota Multiphasic Personality Inventory-2, Weschsler Adult Intelligence Scale-III, Stroop Color Word Test, Clark-Beck Obsessive Compulsive Inventory, and Test of Memory and Malingering (AR 277)), diagnosing Petitioner with dysthymic disorder, anxiety disorder, and rule-out dependent personality disorder (AR 283).  Pursuant to his Mental Medical Source Statement, Dr. Pollack found no limitations with respect to Petitioner's mental activities, except for (1) mild limitations as to Petitioner's (a) "ability to maintain attention and concentration for extended periods" and (b) "ability to accept instructions and respond appropriately to criticism from supervisors"; and (2) marked limitations as to Petitioner's (a) "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and (b) "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (AR 284-286).

The ALJ gave no weight to Dr. Pollack's conclusions for three reasons. First, the ALJ found that Petitioner's counsel's extensive use of Dr. Pollack with predictable results compromises his findings' legitimacy. (AR 20) ("First and foremost, the undersigned again points out that assessments by Dr. Pollack are usually arranged by the claimant's representative, who uses this particular psychologist extensively, as this psychologist appears to always find moderate or marked limitations for numbers 7 and 11, of the standard mental residual functional capacity assessment form . . . which of course historically supports an indication of disability per vocational expert analysis."). Second, the ALJ determined that Petitioner's treatment records indicate an individual with fewer limitations than what Dr. Pollack believes. (*Id*.). Finally, the ALJ argued that Dr. Pollack's opinions as to the severity of Petitioner's limitations are internally inconsistent and, therefore, not reliable. (AR 20-21). The undersigned generally agrees.

Preliminarily, though, while Dr. Pollack may often be employed as a medical expert by Petitioner's counsel, that, by itself, does not operate as a *de facto* challenge to/dismissal of the validity of his opinions. The Court is in no position to look behind Dr. Pollack's motivations when commenting on Petitioner's condition. *See* Def.'s Brief, p. 10 (Docket No. 17) ("Although the Commissioner concedes error in that the ALJ based his rejection of Dr. Pollack's opinion, in part, on the ALJ's experience outside of the record, the error should be found harmless because the ALJ also gave several specific and legitimate reasons for giving no weight to Dr. Pollack's assessment."). Therefore, his opinion must be considered hand-in-hand with those of other medical experts, including Drs. Reed, Callao, Mabee, and Moore.

Examining these other doctors' materials shows that, like Dr. Reed, Dr. Pollack's opinions are not without disagreement. *See supra* at 11-12. Drs. Callao, Mabee, Moore, and,

even to some extent Reed, all found Petitioner to be suffering from conditions that may very well affect her ability to work in some way, but *not* to the extent that Dr. Pollack does in his August 11, 2008 report. These conflicting opinions support the ALJ's decision to lend little to no weight to Dr. Pollack's findings.

However, even when considering Dr. Pollack's conclusions relating to Petitioner's capacity to sustain certain activities over a period of time, it cannot be ignored that there is no evidence in the record supporting the "marked" limitations that Dr. Pollack identifies. This is particularly the case when also realizing that Dr. Pollack found that Petitioner had absolutely no limitations as to 16 other categories of related activities and only two instances where Petitioner had but mild limitations. (AR 284-286). In other words, Dr. Pollack's own findings are arguably at odds with one another, thus calling into question their validity and, as a consequence, their overall persuasiveness here. As Dr. Mabee testified during the September 3, 2008 hearing:

> A:    [Dr. Pollack] did fill out a medical source statement and had two items marked at a marked level which would be much greater than what his testing and evaluation report would indicate. And that was for being able to handle a schedule and be able to work over a period of time without rest periods and interference of psychological symptoms.
>
> Q:    So they are much greater ratings than the testing themselves?
>
> A:    Right.

(AR 65). Dr. Moore stated more-or-less the same thing at the June 4, 2009 hearing in response to questions from the ALJ:

> A:    And as I mentioned earlier, the two diagnoses that are not ruled out are really not compelling mental health disorders in my opinion, anxiety and not otherwise specified and dysthymic disorder. Those are, those are lower grade conditions and I just don't see those as compatible with ratings of marked impairment.
>
> Q:    So what you're saying is the ratings aren't supported by [Dr. Pollack's] report or the medical evidence, medical record as a whole?

A:     That's true, exactly.

Q:     Anything else of the Doctor?

Atty:  No.

(AR 47-48).

With all of this in mind, there is no question that Petitioner suffers from several impairments (acknowledged as "severe" by the ALJ (*see supra* at p. 5)) that no doubt impact her ability to work; however, it cannot be said that the ALJ failed to provide specific legitimate reasons for rejecting Dr. Reed's and Dr. Pollack's opinions. While these physicians' assessments may not have been given the weight Petitioner would have preferred, they nonetheless were considered in the context of the surrounding medical record.

At this point, it is not this Court's duty to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court is tasked with determining whether the ALJ's decision in determining that Petitioner is not disabled as of February 7, 2005 is supported by the record. With this backdrop, given the conflicting medical opinions, the ALJ need only offer specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Drs. Reed's and Pollack's medical opinions. *See supra* at p. 8. Because the evidence can reasonably support the ALJ's conclusions in these respects, this Court will not substitute its judgment for that of the ALJ's. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

    2.    <u>Psychological Evaluation</u>

Upon remand, the Appeals Council instructed the ALJ to "[o]btain additional evidence concerning all of the claimant's mental impairments . . . . The additional evidence will include a

**MEMORANDUM DECISION AND ORDER - 17**

psychological examination with psychological testing and a statement regarding the claimant's ability to perform work-related activities." (AR 113-114). Petitioner argues that the ALJ did not comply with the Appeals Council's directive. *See* Pl.'s Mem. of Authorities, p. 15 (Docket No. 13, Att. 1) ("Finally, the ALJ was ordered to obtain a new psychological evaluation with testing, which was never done."). Petitioner's argument is without merit.

First, following the original, September 3, 2008 hearing, additional evidence consisting of medical records from Dr. Reed and Dr. Moore's June 4, 2009 Psychiatric Review Technique were admitted into the administrative record and considered by the ALJ.[5] (AR 26). These materials did not alter the ALJ's disability determination. (*Id.*).[6] At the very least, it cannot be said that the evidence made a part of the record since the September 3, 2008 hearing was either incomplete[7] or not considered by the ALJ.

_____

[5] It should also be pointed out that, even before the Appeals Council's remand, a clinical psychologist, Dr. Pollack, had already visited with and tested Petitioner. Although rejecting Dr. Pollack's opinions, the ALJ considered his testimony in both disability determinations.

[6] Further, it is Petitioner's responsibility to provide evidence showing the severity of any impairments. *See* 20 C.F.R. § 404.1512(c) ("*Your responsibility*. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim.") (italics in original); *compare* 20 C.F.R. § 404.1512(d) ("*Our responsibility*. Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . . We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.") (italics in original).

[7] Petitioner's reliance on *Brown v. Heckler*, 713 F.2d 441 (9th Cir. 1983) is not persuasive. *See* Pl.'s Mem. of Authorities, p. 15 (Docket No. 13, Att. 1). In stating that an ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," the Ninth Circuit in *Brown* concluded that, "[i]n proceeding without a hearing, the ALJ failed to assume this duty." *Brown*, 713 F.2d at 443. Here, the ALJ did not attempt to resolve Petitioner's claims without a hearing - indeed, two hearings were held.

**MEMORANDUM DECISION AND ORDER - 18**

Second, practically speaking, following the ALJ's July 13, 2009 decision (after remand), the Appeals Council denied Petitioner's request for review on October 16, 2009 (AR 5-7) and, later on October 30, 2009 (AR 1-3). In short, the Appeals Council (the entity issuing the remand) did not find error with the ALJ's corresponding decision addressing the elements warranting remand. Additionally, the ALJ's second decision necessarily became the decision subject to judicial review. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000) ("SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision. But if, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision."). In turn, the ALJ's July 13, 2009 decision appropriately represents the foundation for this Court's consideration of Petitioner's claim.

Therefore, the issue will not be remanded to require the ALJ to consider additional (but not yet in the record or, even, in existence) medical evidence probing once again Petitioner's mental capability of performing some kind of work. The record presented thus far is sufficient for this particular purpose.

3.    Vocational Rehabilitation Expert

Upon remand, the Appeals Council instructed the ALJ to "[o]btain evidence from a vocational expert to allow a comparison between the mental and physical demands of the claimant's past relevant work and her residual functional capacity [and] [i]f the analysis proceeds to step five of the sequential evaluation, obtain evidence from the vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." (AR 114). Petitioner argues that the ALJ did not comply with the Appeals Council's directive. *See* Pl.'s

**MEMORANDUM DECISION AND ORDER - 19**

Mem. of Authorities, p. 11 (Docket No. 13, Att. 1) ("Ms. Solum believes that the vocational expert should have been consulted to determine whether she would be able to work.").

Notwithstanding the Appeals Council's denial of Petitioner's request for review following the ALJ's July 13, 2009 decision (*see supra* at p. 19), Respondent appropriately points out that a vocational expert is not needed if the ALJ finds claimant capable of performing past relevant work. *See* Def.'s Brief, p. 16 (Docket No. 17) (citing *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) ("The determination that Crane could perform his past relevant work also negates his argument that the ALJ erred in the application of the medical-vocational guidelines. We reject the contention that the ALJ erred by failing to call a vocational expert or otherwise erred in applying the five-step sequential evaluation." (internal citation omitted))). Here, Petitioner's nonexertional limitations do not, themselves, limit her ability to return to her past work as a newspaper carrier/deliverer. *Compare Polny v. Bowen*, 864 F.2d 661, 663-64 (9th Cir. 1988) ("But where . . . a claimant's nonexertional limitations are in themselves enough to limit his range of work, the grids do not apply, and the testimony of a vocational expert is required to identify specific jobs within the claimant's abilities."). Because the existing record revealed Petitioner's capability of performing past work, the ALJ did not need to take the fifth step in the sequential analysis and the testimony of a vocational rehabilitation expert was not needed.

Relatedly, two additional matters bear mentioning at this point. First, Petitioner never stated that she had difficulty throughout the three years she performed her duties as a newspaper carrier/deliverer; instead, she gave up that job (which her husband then took over) in order to become a dental assistant which was not successful. Petitioner testified:

Q:     At the same time were you doing this paper route?

A:     Yes.

**MEMORANDUM DECISION AND ORDER - 20**

Q:      You did that for three years?

A:      Yeah.

Q:      So were you doing okay as a paper carrier?

A:      At the time, yeah, until I started working for the dental assistant, it was just way too much.

Q:      So then you were holding both jobs down at the same time, is that correct?

A:      Yeah.

(AR 75, 80-81).  The record fails to establish why Petitioner would be incapable of resuming her duties as a newspaper carrier/deliverer when she was able to do so for three years up until she voluntarily took a job as a dental assistant.  Simply put, Petitioner's impairments did not preclude her from performing the job the ALJ now finds she can still perform.

Second, the reality concerning Petitioner's current abilities vis à vis her past work is confirmed by Petitioner's own husband who consistently stated in December 2006 (after Petitioner's onset date) that Petitioner has "always had this condition" (AR 207, 210, & 212), has "always had these problems with her condition" (AR 211), and "[since 1990], this is the way it's always been since I have been with her" (AR 206 & 213).  Petitioner's ability to maintain employment since 1990, while always suffering the same impairments she now complains of, logically cannot now operate as a disabling condition under Social Security regulations.  Without more, and without a statutory or regulatory mandate, this Court cannot compel what is neither warranted nor required.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739

F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

I am of the opinion that the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decisions as to both Dr. Reed's and Dr. Pollack's opinions are based on proper legal standards and supported by substantial evidence. Moreover, the ALJ's consideration of issues presented on remand were adequately addressed by the ALJ's subsequent decision when read alongside the record as a whole. Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED:  **March 22, 2011**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge